**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **09-09265-dd**

### ORDER ON US TRUSTEE'S MOTION TO DISMISS

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/27/2010**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 10/28/2010

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Ralph Stanley, Jr. and<br>Lorri Koester Stanley,<br><br>Debtors. | C/A No. 09-09265-DD<br><br>Chapter 7<br><br>**ORDER** |

This matter is before the Court on the United States Trustee's ("UST") Motion to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Under Section 707(b)(2) or Alternatively, Based on Totality of the Circumstances Under Section 707(b)(3)(B) ("Motion").  UST filed his Motion on February 18, 2010.  Ralph Stanley, Jr. and Lorri Koester Stanley ("Debtors") filed a Response to UST's Motion on April 15, 2010.  A hearing was held on October 6, 2010.  Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Debtors filed for Chapter 7 relief on December 10, 2009.

2. Initial calculation of the means test on Form B22A raised a presumption of abuse. However, an amended Form B22A did not raise the presumption.

3. Debtors' Schedules I and J disclose $4,614 in combined monthly income ("CMI") and monthly expenses of $4,992, resulting in negative disposable income of $378.

4. Mrs. Stanley suffers from severe depression which in the past caused her to engage in irresponsible spending and which results in her sleeping for excessive periods of time.  As a result of the excessive spending, Debtors accumulated approximately $30,000 in unsecured debt prior to June 2007.

5. In June 2007, Mr. Stanley, an employee of the federal government, took out a loan from his Thrift Savings Plan ("TSP") in the amount of $30,300, which Debtors used to pay off the approximately $30,000 of unsecured debt they had accumulated from 2006 until early 2007. Debtors are currently repaying this loan through payroll deductions from Mr. Stanley's paychecks in the amount of $577 per month. The remaining balance on this loan at the time of Debtors' bankruptcy filing was $16,183. The loan will be fully repaid in approximately twenty months.

6. Debtors' Schedules indicate that they then accumulated additional debt, and the current amount of their unsecured debt, exclusive of the TSP debt, is $36,941.

7. Debtors received tax refunds of $4,799 for 2008 and $7,085 for 2009. Testimony presented by the UST indicated that Debtors have likely been intentionally over-withholding, dating back to the time when Mrs. Stanley operated a home-based child care business. The child care business closed in December 2008.

8. In late 2008, a close friend with a terminal illness moved into Debtors' home and Debtors began to care for her. Debtors' friend passed away approximately six months later, leaving Debtors a kayaking tour business and $16,131.11 in July 2009.

9. Debtors used the money they inherited to purchase two new kayaks, replace the roof on their home, replace the carpet in the bottom floor of their home with tile, and provide medical care to their pets. Debtors spent all of the $16,131.11 inheritance.

10. Debtors continue to operate the kayaking tour business they inherited from their friend. Evidence indicated that as of the date of Debtors' filing, the kayaking business had generated only $100 in income and incurred $4,223.49 in expenses, most of which were paid

with a portion of the inheritance received by Debtors in July 2009. Debtors did not include this income and expenses on their schedules.

11. Debtors also currently spend $733 a month on advertising for the kayaking business. Debtors testified that they expect the kayaking business to break even in 2010, or perhaps earn at most a few thousand dollars.[1]

12. Mrs. Stanley testified that the kayaking business is important to Debtors because it motivates her to get out of the house and get some sunlight and exercise and is therefore a good form of therapy for her depression.

13. Mrs. Stanley also takes medication for her illness and is currently under the care of a physician. Mrs. Stanley testified that due to her illness she does not believe she can work outside the home.[2]

## CONCLUSIONS OF LAW

UST first argues that Debtors' filing should be presumed abusive, because if Debtors' deduction for Mr. Stanley's TSP loan repayments is not allowed and Debtors' inheritance and tax refunds are included in their income, Debtors' monthly disposable income will be well above the $182.50 per month required for a presumption of abuse to arise. UST further argues that Debtors have not rebutted this presumption by a showing of special circumstances, as set forth in section 707(b)(2)(B).

11 U.S.C. § 707(b)(1), in relevant part, provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in

---

[1] As a result of this testimony, the Court assumes that the kayak business's expenses offset any income it has earned and does not include any such income or expenses in its calculations or discussion.

[2] Mrs. Stanley is also currently supervising her teenage daughter ,who is participating in online high school. Mrs. Stanley testified that this also contributed to her inability to work, as she could not leave her daughter home alone.

> interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . .

Section 707(b)(2)(A)(i) creates a presumption of abuse in certain circumstances. If a debtor's monthly disposable income, which equals a debtor's current monthly income after all allowable deductions, is at least $182.50, the debtor's chapter 7 filing is presumed to be an abuse. 11 U.S.C. § 707(b)(2)(A)(i); *In re Tauter*, 402 B.R. 903, 905 (Bankr. M.D. Fla. 2009). If the debtor's monthly disposable income is less than $109.58 per month, there is no presumption of abuse. 11 U.S.C. § 707(b)(2)(A)(i); *Tauter*, 402 B.R. at 905. Finally, if the debtor's income is between these two amounts, a presumption of abuse will arise if the debtor's monthly disposable income, multiplied by 60, would pay "25 percent of the debtor's nonpriority unsecured claims in the case." 11 U.S.C. § 707(b)(2)(A)(i). *See also Tauter*, 402 B.R. at 905.

If a presumption of abuse is found under section 707(b)(2)(A)(i), a debtor may rebut that presumption by demonstrating some type of special circumstances. 11 U.S.C. § 707(b)(2)(B)(i). Section 707(b)(2)(B)(i) provides two examples of special circumstances, but courts may find special circumstances in a variety of other situations as well. *In re Parulan*, 387 B.R. 168, 172 (Bankr. E.D. Va. 2008) (citing *In re Vaccariello*, 375 B.R. 809, 813 (Bankr. N.D. Ohio 2007)). Establishing special circumstances is not an easy task for a debtor; section 707(b)(2)(B)(ii) provides:

> In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide –
> (I)   documentation for such expense or adjustment to income; and
> (II)  a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

Additionally, section 707(b)(2)(B)(iii) provides that the debtor must "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required." Finally, section 707(b)(2)(B)(iv) requires that the additional expenses

resulting from the debtor's special circumstances actually cause the debtor's monthly disposable income, multiplied by 60, to drop below the lesser of 25% of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or $10,000.  11 U.S.C. § 707(b)(2)(B)(iv).

Debtors' revised Form B22A shows monthly disposable income of $117.66, or over 60 months, $7,059.60.  This amount, by itself, does not cause the presumption of abuse to arise.  The total amount of Debtors' nonpriority unsecured debt is $36,941, and 25 percent of this amount is $9,235.25.  As a result, based solely on the means test calculation completed by Debtors, the presumption of abuse does not arise.

Debtors failed to include some of their income in their means test calculation.  11 U.S.C. § 101(10A) defines "current monthly income" as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on – (i) the last day of the calendar month immediately preceding the date of the commencement of the case . . . ."  This section clearly requires Debtors to include all money they received from any source in the six months prior to their bankruptcy filing.  Form B22A also uses very similar language to instruct the debtor in completing the form.  However, Debtors omitted their $16,131.11 inheritance from their Form B22A.  The inheritance was received in July 2009, during the six month period prior to Debtors' bankruptcy filing.  As a result, it should be included in Debtors' means test calculation.  Inclusion of this inheritance would result in additional income of $2,688.52 per month.

Debtors also omitted their substantial 2009 tax refund of $7,085 from the calculation.  Debtors over-withheld for 2009 in the amount of $590.41 per month.  Debtors have recently been informed they owe the IRS approximately $2,100 due to an error in their 2008 taxes.  Debtors should be given a credit for this repayment obligation; however, this credit will have a

minimal impact on Debtor's monthly disposable income. With the addition of Debtors' inheritance and 2009 tax refund, Debtors have monthly disposable income of about $3,000, putting them substantially above the $182.50 a month necessary for the presumption of abuse to arise.

Additionally, Debtors are not entitled to a deduction for Mr. Stanley's monthly repayments of their TSP loan. The majority of courts that have considered whether debtors are allowed deductions for loan repayments on their retirement savings plans have found that no such deduction should be allowed.[3] The Court agrees with the majority approach. While the Court believes that Debtors took out the TSP loan with the good faith intent to attempt to repay their creditors, Debtors should not now be allowed to avoid paying those creditors while they instead repay themselves. As a result, Debtors are not entitled to a deduction for the $577 per month TSP loan repayment.

Once a presumption of abuse has been established, the debtors may rebut the presumption by a showing of special circumstances. Debtors argue that special circumstances exist here

---

[3] *See In re Ethington*, slip op., 2009 WL 1751431, at *1 (Bankr. E.D.N.C. 2009) ("[P]ursuant to 11 U.S.C. § 707(b)(2)(A)(ii)(I) and Section 5.15.1.10 of the IRM, the Debtor's TSP loan repayment is not an involuntary deduction. . . . because of the inability of the Debtor to deduct the TSP loan repayment as an Other Necessary Expense, the Debtor fails the means test and abuse is presumed."); *Eisen v. Thompson*, 370 B.R. 762, 772 (N.D. Ohio 2007) ("Congress was presumably well aware of the case law holding that 401(k) loans were not 'debts' under the Code, and that such obligations did not create creditor-debtor relationships, when it drafted the 2005 amendments. Congress could have easily composed an amendment stating that 401(k) loans constitute 'debts' or 'secured debts.'"); *In re Turner,* 376 B.R. 370 (Bankr. D.N.H. 2007) (rejecting various arguments of debtors and disallowing any deduction for 401(k) loan repayments); *McVay v. Otero*, 371 B.R. 190 (W.D. Tex. 2007) (engaging in an extensive discussion of case law and Congressional intent and ultimately holding that 401(k) loan repayments are not deductible expenses); *In re Lenton*, 358 B.R. 651, 660 (Bankr. E.D. Pa. 2006) ("I conclude that repayment of loans from voluntary retirement accounts through mandatory payroll deduction does not meet the necessary expense test under the IRS Manual, the standard adopted by the means test."); *In re Collins*, 2004 WL 3510107, at *4 (M.D.N.C. 2004) (holding that 401(k) loan repayments are voluntary and "in the context of a § 707(b) determination should be treated as disposable, available income for purposes of evaluating whether the debtor has the ability to repay her creditors"). *See also In re Anstett*, 383 B.R. 380 (Bankr. D.S.C. 2008). This Court held that in chapter 13, Debtor was not entitled to deductions for 401(k) loan repayments over the life of the plan because the loans would be repaid prior to Debtor's completion of the plan and such deductions were therefore not amounts "required to repay" the loans. *Anstett*, 383 B.R. at 384. Similarly, the Stanleys claim they are entitled to deductions for TSP loan repayments, yet these loan repayments will end in less than two years. While *Anstett* involved a chapter 13 debtor, its reasoning and conclusion are helpful in the present case.

because Mrs. Stanley has a serious medical condition which caused her to rapidly accumulate debt and was the primary cause of Debtors' financial troubles.

Courts have adopted differing approaches in determining what constitutes "special circumstances." The first line of cases has taken a narrow approach, requiring that the additional expense or decrease in income be extraordinary in some way. *In re Siler*, 426 B.R. 167, 172 (Bankr. W.D.N.C. 2010). Under this approach, rebuttal of the presumption of abuse under section 707(b)(2) appears to be a two step process. First, a debtor must show that some sort of special circumstances exist, such as a serious medical condition or "a call or order to active duty in the Armed Forces." 11 U.S.C. § 707(b)(2)(B); *Siler*, 426 B.R. at 172. Next, the debtor must show that these special circumstances leave him with "'necessary and reasonable' expenses 'for which there is no reasonable alternative.'" *Siler*, 426 B.R. at 172 (quoting *In re Tauter*, 402 B.R. 903 (Bankr. M.D. Fla. 2009)).[4]

The second line of cases takes a broader approach to special circumstances. Courts that use this approach tend to find that the debtor's special circumstances do not have to be out of his control, and in fact do not even have to be unanticipated. *Id.* The court in *Siler* noted that "[a] few courts define the term special so broadly that 'any legitimate expense that is out of the ordinary for an average family and leaves the debtor with no reasonable alternative but to incur

---

[4] *See also Eisen v. Thompson*, 370 B.R. 762, 773 (Bankr. N.D. Ohio 2007) ("'Special circumstances,' as evidenced by the examples given in the statutory text, refers to circumstances which require a debtor to incur additional expenses or adjustments to his current monthly income. As another court recently wrote, 'the plain language of section 707(b)(2)(B) is clear-for a debtor to successfully obtain an additional expense or adjustment of [current monthly income], she must demonstrate a special circumstance which leaves her with no reasonable alternative but to incur the expense or cause the income adjustment.'") (quoting *In re Haman*, 366 B.R. 307, 313 (Bankr. D. Del. 2007)). In that case, the court additionally stated that "an obligation to repay a [401(k)] loan is not a 'special circumstance,' but the circumstances that led to taking that loan may be 'special' under § 707(b)(2)(B)(i)." *Id.* However, the court found that the debtors' circumstances were not special, as the 401(k) loan had been taken out to pay credit card debts, and the credit card debt was due to "ordinary household and personal goods, such as clothing and food." *Id.* The debtors' situation in *Eisen*, therefore, was similar to Mr. and Mrs. Stanley's in the present case.

the expense' qualifies." *Siler*, 426 B.R. at 172 n.4 (citing 6 Collier on Bankruptcy ¶ 707.05[2][d]; *In re Batzkiel*, 349 B.R. 581, 586 (Bankr. N.D. Iowa 2006)).

The Court adopts the first, narrower interpretation of section 707(b)(2)(B) as the better approach, which is consistent with the statutory scheme and encourages chapter 13 filings. In the present case, this approach requires Debtors to establish special circumstances and then show how these special circumstances have created necessary and reasonable expenses with no reasonable alternative. The additional expenses caused by the special circumstances must directly relate to the costs of dealing with such circumstances rather than be the product of them. Debtors have failed to make this showing. Debtors have certainly established that Mrs. Stanley has a serious medical condition, satisfying the first element. However, Debtors failed to show that Mrs. Stanley's medical condition caused Debtors to incur any reasonable, necessary expenses for which they had no reasonable alternative. It would be quite a stretch for the Court to hold that the TSP loan repayments are a reasonable and necessary expense incurred to deal with Mrs. Stanley's condition. Debtors testified that the loan was taken out to pay off credit card debt incurred by Mrs. Stanley as a result of her illness.[5] Clearly, the debt incurred by Mr. and Mrs. Stanley was a product of Mrs. Stanley's illness, not a reasonable and necessary expense incurred to deal with it.

Finally, Debtors have not satisfied the procedural elements of section 707(b)(2)(B)(ii). This section requires Debtors to provide documentation for the additional expenses caused by their special circumstances, and also requires a detailed explanation of the special circumstances that made the expenses necessary and reasonable. While Debtors provided substantial testimony

---

[5] The Court also notes that despite the fact that Mrs. Stanley testified she has ceased her frivolous spending, Debtors accumulated approximately $36,000 in unsecured debt subsequent to Mr. Stanley taking out the TSP loan and paying off Debtors' credit card debt. The Debtors did later destroy their credit cards and have apparently learned to resist the temptation to overspend.

and evidence regarding Mrs. Stanley's illness, they failed to make any showing of what expenses were incurred as a direct result of such illness. In fact, Mrs. Stanley testified that she could not point to specific purchases she had made but stated that the $30,000 debt Debtors had accumulated was a result of little purchases here and there, such as food, clothing, and other ordinary household and personal goods. The Court finds that this testimony does not satisfy the stringent standard of section 707(b)(2)(B)(ii). As a result of Debtors' failure to satisfy the standards set forth in section 707(b)(2)(B), the Court finds that Debtors have failed to rebut the presumption of abuse, and their case must either be converted or dismissed.

## **CONCLUSION**

A proper means test calculation in Debtors' case causes the presumption of abuse under section 707(b)(2) to arise. Because Debtors have failed to rebut the presumption of abuse by establishing special circumstances and additional expenses under section 707(b)(2)(B), Debtors' case must be converted or dismissed.

Unless Debtors voluntarily convert this case to a case under Chapter 11 or 13 of the Bankruptcy Code within ten (10) days from the entry date of this order, the UST's Motion to Dismiss will be granted and this Chapter 7 case will be dismissed pursuant to section 707(b) without further notice or hearing.

**AND IT IS SO ORDERED.**